The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

N.F., BY AND THROUGH HER MOTHER AND
NEXT FRIEND, M.R.,

Plaintiff,

v.

MICROSOFT CORPORATION WELFARE
PLAN; PREMERA BLUE CROSS; and
MICROSOFT CORPORATION,

Defendants.

Case No. 2:20-cv-00956-JCC

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff N.F. has established by a preponderance of the evidence that her treatment at Sunrise Residential Treatment Center ("Sunrise") commencing May 14, 2016, was medically necessary under terms of the Microsoft Employee Health and Welfare Benefit Plan ("the Plan").

Defendants argue that the "abuse of discretion" standard of review applies based upon a plan document and administrative services agreement, which they produced for the first time as an exhibit to their motion for summary judgment. Defendants failed to produce these documents (1) in pre-litigation communications, (2) in the administrative record, (3) in response to Plaintiff's First Request for Production of Documents, or (4) prior to the close of discovery, in violation of the Federal Rules of Civil Procedure and Defendants' fiduciary duties under ERISA. Courts hold that belatedly-produced plan documents that potentially alter the applicable standard of review should not be considered because of extreme prejudice. Because Plaintiff would be severely

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY  JUDGMENT - Page 1 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

prejudiced by consideration of these plan-related documents, they should not be admitted.  Based upon Plan's 2016 Summary Plan Description ("SPD") – the only plan document Defendants produced prior to the filing of their motion for summary judgment – the Court should conduct a *de novo* review.  This Court concluded in *A.H. v. Microsoft Corp. Welfare Plan*, 2018 U.S. Dist. LEXIS 94537, at *4 (W.D. Wash. June 5, 2018), that the applicable standard of review according to that SPD is *de novo*.

Even if the Court were to consider Defendants' belatedly-produced documents (and it should not), the documents make no difference because they do not ***delegate*** discretion to Premera, the decision-maker regarding Plaintiff's claim, pursuant to express plan procedures. Accordingly, the applicable standard of review is *de novo*.

Through her providers, Plaintiff has established that residential treatment at Sunrise was the medically appropriate, least restrictive environment for treatment of her mental health and substance abuse conditions.  N.F.'s need for residential treatment is fully supported by all treating providers and an examining neuropsychologist.

Only Defendants' file review consultants, Dr. Small and Dr. Holmes, concluded that residential treatment was not medically necessary.  However, their opinions were the result of errors and shoddy work.  Their brief reports do not discuss the medical record, or the basis for their conclusions or their disagreement with the treating and examining providers.  They failed to contact a single provider to discuss Plaintiff's condition or the difference of opinion.  They issued their reports on the same day their reviews were requested, calling into question the adequacy of their reviews.

Neither consultant applied the Plan's coverage terms.  Instead, they mechanically applied an InterQual guideline that requires a showing that planned residential treatment be short-term only – a condition absent from the Plan and that does not meet the standard of care.  In applying the guideline, they also erroneously cited a lack of dramatic violent behaviors, but ignored Plaintiff's history, which included early childhood trauma, including sexual abuse, recent school

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 2 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

and counseling refusal, extensive drug use and a substance abuse disorder, anxiety disorder and post-traumatic stress disorder. The consultants' rushed reports are without merit.

Defendants attempt to buttress their arguments with an anonymous external review ("IRO") opinion. They obtained this opinion without Plaintiff's consent. Indeed, Plaintiff was not involved in the IRO process at all, and neither Defendants nor the reviewer noticed that Plaintiff's IRO request was for a different claim. The Court should not consider the IRO opinion, which was obtained improperly, in violation of state and federal law.

The only reasonable conclusion based upon a *de novo* review is that N.F. is entitled to coverage of her claim for Sunrise's treatment. Plaintiff asks the Court to overturn the erroneous denial decision and order Defendants to approve and pay her coverage claim under the terms of the Plan and pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## II. ARGUMENT

### A. The Standard of Review is *De Novo*.

#### 1. The Plan Documents Only Confer Discretionary Authority on Microsoft, not Premera.

"The *de novo* standard is appropriate 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"*A.H.*, 2018 U.S. Dist. LEXIS 94537, at *4 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Defendants have not met their burden, as "the part[ies] seeking discretionary review[,] to establish that such power exists under the plan." *Id.* at *4-5 (citing *Ingram v. Martin Marietta Long Term Disability Plan*, 244 F.3d 1109, 1112 (9th Cir. 2001)). *See* Dkt. No. 28 at 8-9.

A plan fiduciary can only delegate discretionary authority if: (1) the plan "expressly provide[s] for procedures … allocating fiduciary responsibilities" and (2) the named fiduciaries "designate persons … to carry out fiduciary responsibilities … under the plan." 29 U.S.C. § 1105(c)(1). Neither requirement is met.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212   503-223-7400

*First*, the Plan fails to set forth any "procedures" for allocating fiduciary responsibilities. It states that "Microsoft may delegate this discretionary authority to select service providers." Dkt. No. 25-1 at 93.  It does not articulate any procedures on *how* any such delegation occurs. Reserving the ability to delegate, standing alone, does not meet the requirement that the Plan "expressly provide" for specific delegation "procedures." *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993).

An identical situation arose in *Rodriguez-Abreu*, where the plan provided that "the Named Fiduciaries or their delegates have discretion in interpreting the meaning of Plan provisions and in determining questions of fact." *Id*. The language established no "express procedures" under which a beneficiary (or a reviewing court) could determine whether a proper delegation had, in fact, occurred under the plan:

> [Defendant Employer] fails to point to any plan provisions which provide *express procedures for the delegation* of the Fiduciary's discretionary authority to a delegate, and we have found none.

*Id*. (emphasis added).  *See also Shane v. Albertson's Inc. Emps.' Disability Plan*, 381 F. Supp. 2d 1196, 1203 (C.D. Cal. 2005) ("While the Trustees did have the power to delegate their discretionary authority, nothing presented to the Court indicates that such authority was properly delegated.").

*Second*, Premera was never designated. This is a fatal omission because "a named fiduciary [must] properly designate[] another fiduciary" as its delegee. *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1283-84 (9th Cir. 1990). Here, the Plan states that Microsoft "may" delegate discretionary authority to "select service providers." It does not state that Microsoft has done so. The law requires more:

> To be an effective delegation of discretionary authority so that the differential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority.
>
> * * *
>
> Because … the Named Fiduciaries did not expressly delegate their discretionary authority to the Plan Administrator, we find that the district court correctly employed the *de novo* standard of review.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - Page 4 of 25
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

*Rodriguez-Abreu*, 986 F.2d at 584 (*citing Madden*, 914 F.2d at 1283-84).  Here, the Plan never actually delegated anything to Premera.[1]

Finally, it is dispositive that **neither** (1) the express procedures nor (2) the identity of any delegate appear in the actual plan documents. The statute specifically requires that the plan documents contain these elements. 29 U.S.C. § 1105(c)(1) ("***The instrument under which a plan is maintained*** may expressly provide for procedures … for named fiduciaries to designate….") (emphasis added). Here, Premera attempts to rely upon language in Administrative Service Agreement (ASA) to fill the void in the Plan. But an agreement between the employer and service contractor is not a plan document, and cannot bind a beneficiary who never sees the agreement.[2] *Fitcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) ("[T]he ASA … is not a 'plan document' for purposes of holding its terms against a plan participant or beneficiary."); *Miller v. PNC Fin. Servs. Group.*, 278 F. Supp. 3d 1333, 1351 (S.D. Fla. 2017) (third party contract cannot grant discretion); *Mirick v. Prudential Ins. Co. of Am.*, 100 F. Supp. 3d 1094, 1097 (W.D. Wash. 2015) ("The SPD and ASA are generally not considered part of the ERISA plan…. If these additional documents are not part of the plan, the terms of the plan itself … controls."); *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 518 (W.D. Mich. 2006) (delegation found

---

[1] *See also Rodriguez-Lopez v. Triple-S Vida, Inc.*, 850 F.3d 14, 23 (1st Cir. 2017) ("[T]he delegation must be clear and the fiduciary must properly designate a delegate for the fiduciary's discretionary authority.") (also *citing Madden*, 914 F.2d at 1283-84); *Shane*, 381 F. Supp. 2d at 1203 (although power to delegate was reserved in the plan, nothing in the plan effected a delegation to a specific delegate:  "[T]he 1993 Plan contains no *express* delegation of authority to *any body*, save the Trustees.") (emphasis in original); *O'Rourke v. Pitney Bowes*, 1997 U.S. Dist. LEXIS 11002, *19 (S.D. N.Y., July 31, 1997) ("[T]he company has not provided any document reflecting any express delegation by the EBC to the plan administrator.").

[2] The Supreme Court, in *Amara*, narrowed the type of documents that constitute the ERISA plan. *Becker v. Williams*, 777 F.3d 1035, 1038-39 (9th Cir. 2015) (noting that the Supreme Court narrowed the documents that constitute "plan documents" in *Amara*, and finding that forms external to plan were not plan documents) (*citing CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866 (2011)); *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 170, n. 8 (4th Cir. 2013) (declining to consider an ASA for state-law reasons, but noting that "in the ERISA context, the Supreme Court's decision in *Amara* has cast serious doubt on whether non-plan documents can be used to interpret a plan's language.").

in ASA invalid).[3]  Defendants' belatedly disclosed and incomplete ASA (Dkt. No. 27-5 at 41-44) is not part of the Plan.[4]

The requirement that the plan documents detail any grant of delegation follows directly from the concern that employees be able to understand how the plan works. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223 (1995) (one of ERISA's basic purposes was to afford employees the opportunity to inform themselves, "on examining the plan documents," of their rights and obligations under the plan); *Stephanie C. v. Blue Cross Blue Shield of Mass.*, 813 F.3d 420, 429 (1st Cir. 2016) ("Any terms that concern the relationship between the claims administrator and the beneficiaries cannot be held against the beneficiaries where, as here, the terms appear in a financing arrangement between the employer and the claims administrator that was never seasonably disseminated to the beneficiaries against whom enforcement is sought.").[5] Because the Microsoft Plan does not provide delegation procedures *and* does not designate any discretionary power to Premera, the standard of review is *de novo*.

### 2. This Court has already determined that the 2016 Microsoft SPD did not confer discretionary authority.

This Court determined that the 2016 Microsoft SPD did not confer discretion in *A.H.,* a case in which N.F. was originally a named plaintiff.  *See* Hamburger Decl., ¶1.[6]

> On this record, Defendant has not met its burden to demonstrate the Plan conferred discretion on Premera regarding benefit determinations such that the Court should apply an abuse of discretion standard.  Therefore, the Court reviews Premera's interpretation of the Plan *de novo*.

---

[3] *See also Rodriguez-Lopez v. Triple-S Vida, Inc.*, 850 F.3d 14, 21 (1st Cir. 2017) ("Case law, however, requires that the delegation of discretionary authority to an administrator or fiduciary be *clearly stated in the plan*.") (emphasis added); *Gross v. Sun Life Assur. Co. of Can.*, 734 F.3d 1, 14 (1st Cir. 2013)) ("[T]he critical question is whether *the plan* gives the employee adequate notice that the plan administrator … has the latitude to shape the application, interpretation, and content of the rules in each case.").

[4] Defendants do not even produce complete copies of the Welfare Plan or ASA. The Welfare Plan's pages are numbered 1-35; three exhibits follow.  Four pages of the ASA (numbered 1-4) follow. Page 4 ends with the first word of a sentence ("The…"), showing the document is incomplete. A page "30" follows, but does not appear to be part of the Welfare Plan or ASA.

[5] ERISA is a remedial statute whose "intended purpose [is to] protect[] participants' and beneficiaries' interests." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016). This remedial purpose "may prove decisive in an otherwise close case." *Risteen v. Youth for Understanding, Inc.*, 2003 U.S. Dist. LEXIS 16726, *11 (D.C. Cir., Aug. 19, 2003).

[6] The 2016 SPD Defendants produced in the present case differs slightly from the 2016 SPD addressed in *A.H.*, however, the minor differences are immaterial to the determination of the applicable standard of review.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY  JUDGMENT - Page 6 of 25
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

2018 U.S. Dist. LEXIS 94537, at *6-7.  The Court explained:

> The Plan [the SPD] grants Microsoft "complete discretion to interpret and
> construe the provisions of the plan options, programs, and policies described in
> this [Plan], to determine eligibility for participation and for benefits . . . ." (Dkt.
> No. 27 at 336.)  The Plan also grants Microsoft authority to delegate this
> discretion to third-parties. (*Id.*)
>
> Notwithstanding this language, the record does not demonstrate that the Plan
> confers discretionary authority on Premera, or that Microsoft has delegated its
> authority. The Plan lists Microsoft, not Premera, as the Plan administrator. (Dkt.
> No. 27 at 335.) It is undisputed that Premera, not Microsoft, denied Plaintiff's
> request for benefits. (*See* Dkt. No. 25-1 at 214-15.)

*Id.* at *5.  The 2016 Microsoft SPD is the **only** plan document Defendants produced in response

to Plaintiff's pre-litigation requests.  Hamburger Decl., ¶ 5.  It is the only plan document

provided by Defendants prior to the close of discovery on July 16, 2021 (Dkt. No. 19) and prior

to the filing of their dispositive motion on August 27, 2021 (Dkt. No. 26).  It is the only Plan

Document in the administrative record.[7]  Based upon the SPD, no discretionary authority is

conferred on Premera.

The provisions in the SPD that the Court analyzed in *A.H.* are identical to those of the

present SPD:

> ***A.H.* SPD**: "Microsoft shall have complete discretion to interpret and construe the
> provisions of the plan options, programs, and policies described in this SPD, to
> determine eligibility for participation and for benefits...."  Hamburger Decl., Ex.
> 1, p. 332 (*A.H.,* Dkt. No. 27 at 332.)
>
> ***N.F.* SPD***:* "Microsoft shall have complete discretion to interpret and construe the
> provisions of the plan options, programs, and policies described in this SPD, to
> determine eligibility for participation and for benefits…"  Dkt. No. 27-1 at 333.

This provision confirms that Premera had no discretionary authority pursuant to the

applicable SPD.

---

[7] Defendants provided 83 of the 348 pages of the SPD in their administrative record.  *See* AR 1062-1145.  The
complete SPD is Exhibit 2 to Plaintiff's Complaint (Dkt. No. 1) and Defendants filed the complete version for the
first time in support of their Motion for Summary Judgment. Dkt. No. 27-1.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY  JUDGMENT - Page 7 of 25
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

The SPD states that "Microsoft **has the authority to delegate** the day-to-day administrative duties to a third Party" and that "Microsoft **may delegate** [its] discretionary authority to select service providers." *Id*. at 333; Hamburger Decl., Ex. 1 at 332 (emphasis added).  However, there is no actual delegation in the SPD.[8]

In six instances the SPD contains the following phrase:  "The plan administrator (Premera, Group Health Cooperative, or Kaiser Permanente)...", but there is no actual **delegation**.  *Id*, pp. 16, 17, 196, 322.  Like the materially identical SPD at issue in *A.H.*, the present SPD "does not demonstrate that the Plan confers discretionary authority on Premera, or that Microsoft has delegated its authority."  2018 U.S. Dist. LEXIS 94537, at *5.[9]  Accordingly, the Court concluded in *A.H*:

> **Just because the Plan confers discretion on Microsoft does not mean that discretion automatically passes to Premera**. *See Shane v. Albertson's Inc. Employees' Disability Plan,* 381 F. Supp. 2d 1196, 1203 (C.D. Cal. 2005) ("While the Trustees did have the power to delegate their discretionary authority, nothing presented to the Court indicates that such authority was properly delegated."). Defendants merely point to the Plan language that confers discretion on Microsoft and allows Microsoft to delegate its discretion to third parties. (Dkt. Nos. 26 at 17, 33 at 8.)  On this record, Defendant has not met its burden to demonstrate the Plan conferred discretion on Premera regarding benefit determinations such that the Court should apply an abuse of discretion standard. Therefore, the Court reviews Premera's interpretation of the Plan de novo.

*Id*. at *6-7 (emphasis added).[10]  The applicable standard of review in the present case is *de novo*.

> **3.  Defendants cannot rely upon previously-undisclosed documents to demonstrate that discretionary authority was delegated.**

The SPD is the only plan document Defendants included in their administrative record both pre-litigation and during discovery.  *See* AR 1062-1145; *See* Glor Decl., ¶ 4; Hamburger Decl., ¶ 5.  Pre-litigation, Plaintiff's counsel requested the complete administrative record,

---

[8] The word "delegate" is only used in these two instances in the SPD.  Glor Decl., ¶ 9.
[9] There are 472 instances of the word "Premera" in the SPD.  None include a delegation of discretionary authority to Premera.  *See* Glor Decl., ¶ 7 and Dkt. #27-1, *passim*.
[10] The word "discretion" or "discretionary" is used four times in the SPD.  *See* Glor Decl., ¶ 8. Discretion is not conferred on Premera in any of those instances.  *See* Dkt. No. 27-1, pp. 19, 321, 333 (2 instances).

including all relevant plan documents, from Premera.  *Id*., ¶3.  Neither the Welfare Plan nor the ASA was provided.  *Id.*

After the lawsuit was filed in June 2020, Plaintiff served her First Request For Production, which requested that Defendants produce "The Microsoft Plan, including all summaries, benefit booklets, schedules of benefits, amendments, addenda, attachments and exhibits." Glor Decl., ¶1 and Ex. A, p. 7 (#1).  Defendants asserted in their Response to Plaintiff's First Request, dated January 26, 2021, "this information has already been provided to the Plaintiff or is otherwise in the Plaintiffs possession" and "Defendants have already produced the administrative record in this case."  *Id*., Ex. B, pp. 6-7 (#1).  They made the same assertion in a Supplemental Response, dated April 16, 2021.  *Id*., Ex. C, pp. 7-8 (#1).  Discovery closed on July 16, 2021.  Dkt. No. 19 at 2.  No copy of the Welfare Plan or ASA was produced.  Glor Decl., ¶ 4.

For the first time, attached to their motion for summary judgment, Defendants produced these two previously undisclosed plan-related documents: "The Microsoft Corporation Welfare Plan" (Dkt. No. 27-5 at 1-39) ("Welfare Plan") and a "Master Administrative Services Contract Between Premera Blue Cross and Microsoft Corporation." *Id*. at 40-44.  Defendants argue that through these documents, "Microsoft delegated its authority to exercise discretion in deciding claims to Premera."  Dkt. No. 29-1 at 16.  The Court should not consider these documents because Defendants failed to produce them in their "administrative record," pre-litigation, in response to written discovery or prior to the discovery cutoff.

In *Luck v. Metro. Life Ins. Co.*, No. EDCV 05-917-VAP (SGLx), 2006 U.S. Dist. LEXIS 67508, at *18 (C.D. Cal. Aug. 29, 2006), rejecting the defendants' arguments that the court should consider an ASA containing a grant of discretionary authority produced for the first time in their briefing on dispositive motions, the Court concluded that the defendants' belated production of the ASA "was not harmless."  *Id*. at *18.  The Court agreed with the plaintiff that admission of the ASA "would prejudice Plaintiff," who had relied upon the SPD – the only plan

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 9 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

document the defendants had produced prior to briefing – that did not contain a grant of discretion. Accordingly, understanding judicial review would be *de novo*, plaintiff's counsel had not conducted "a thorough investigation regarding MetLife's conflict of interest" through discovery. Accordingly, the Court concluded, "pursuant to Rules 26(a)(1)(B) and 37(c)(1), the ASA is inadmissible, and Defendants have no admissible evidence that MetLife was delegated with discretionary authority over the Plan." *Id*. at *18-19.

Similarly, in *Coleman vs. Hartford Life Ins. Co.*, 432 F. Supp. 2d 1030 (C.D. Cal. 2006), the Court refused to consider part of a plan document produced by the defendant for the first time four days before Plaintiff's opening brief was due. The defendant had failed to produce this portion of the plan document, which conferred discretionary authority upon the insurer, in its "administrative record" or prior to the discovery cutoff. The Court sustained the plaintiff's "objection to the admission of the General Information Section," agreeing that "it was not timely produced and its inclusion would result in considerable prejudice to Plaintiff." *Id*. at 1033.

In the present case, Plaintiff's counsel conducted limited discovery, seeking to ensure that Defendants had produced all plan and claim-related records and all criteria that were utilized in reviewing Plaintiff's claim. *See* Glor Decl., ¶¶ 1, 10 and Ex. A. They did not conduct "conflict" discovery because there was no evidence of delegation. *Id*., ¶ 10; *See Hancock v. Aetna Life Ins. Co.,* 321 F.R.D. 383 (W.D. Wash. 2017). Based upon the single Plan document produced by Defendants in their administrative record and their representations in their Response and Supplemental Response to Plaintiff's First Request for Production that all plan documents had been produced, Plaintiff's counsel reasonably believed the applicable standard of review was *de novo*.[11]

Had Defendants disclosed the Welfare Plan, Plaintiff's counsel would have served conflict discovery, including, but not limited to:

---

[11] The Court's conclusion that the applicable standard of review in *A.H.*, based upon the 2016 SPD, the only plan document Defendants' produced in the instant case, gave Plaintiff's counsel further assurance that this was the only Plan document at issue. Ms. Hamburger served as Plaintiff's A.H.'s counsel. Hamburger Decl. ¶1.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - Page 10 of 25
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

- Statistics regarding the frequency of Defendants' use of physician consultants, Premera's Dr. Robert Small and MRiA's Dr. William Holmes;
- Dr. Small's and Dr. Holmes' prior and subsequent reports in residential treatment cases;
- Evidence of Defendants' costs and cost savings in residential treatment cases based upon certain variables;
- Dr. Small's performance reviews and compensation data, including bonuses;
- The original format versions of Dr. Small's and Dr. Holmes' reports, to determine the dates they were prepared and any text imported from other authors' files;
- All emails regarding Plaintiff's claim between, among or including Dr. Small, MRiA and/or Dr. Holmes.

Glor Decl., ¶ 10. Because Plaintiff would be greatly prejudiced by the admission of Defendants' belatedly-produced (and improperly withheld) Plan-related documents, the documents should not be considered.

### 4. Discretionary Authority Was Not Granted To Premera, even in Defendants' belatedly-produced documents.

Even if the Court were to consider Defendants' belatedly-produced documents (and it should not), the documents make no difference. As described above, language in an ASA is ineffective to delegate discretionary authority because the ASA is not a Plan document. *See* pp, 5-6, *supra*.

The Welfare Plan does not help Defendants either. Defendants erroneously argue that it "provides that Microsoft may delegate its claims administration duties to a claims administrator," that the Welfare Plan incorporates the SPD, and that the SPD "in turn identifies Premera as Microsoft's delegate who will evaluate claims..., and possesses complete discretionary authority to decide claims." Dkt. No. 29-1 at 16. A close review of the document reveals this to be patently untrue.

The Welfare Plan identifies the "Employer," Microsoft Corporation, as "the Named Fiduciary and the Plan Administrator of this Plan" and states that the Plan Administrator shall "interpret the provisions of the Plan" and "determine eligibility for any amount of benefits for any Participant." Dkt. No. 27-5 at 8 (¶ 1.7), 14 (¶ 5.1, 5.2(a)(ii), (iv)). Defendants correctly assert that the "SPD is incorporated into the [Welfare] Plan by reference. Dkt. No. 29-1 at 17; *see Id*. at 5.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - Page 11 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

However, contrary to their argument, the SPD does ***not*** "in turn identif[y] Premera as Microsoft's delegate who will evaluate claims..., and possesses complete discretionary authority to decide claims." *Id*. at 16. ***That language is nowhere in the SPD or the Welfare Plan***.

Defendants misleadingly cite page 16 of the SPD as "identifying Premera as the 'plan administrator.'" *Id*. The complete provision from which they extract this snippet states:

> The Microsoft plan will not pay a claim submitted more than 365 days from the date of service. Employee and/or dependents will have 365 days from the date of the primary insurance Explanation of Benefits (EOB) to submit claims to the **plan administrator (Premera, Group Health Cooperative, or Kaiser Permanente)** for consideration (emphasis added).

Dkt. No. 27-1 at 16. The bolded words appear in six other instances in the SPD. *Id*. at 15, 16, 195 (3 instances), 321. ***None include a delegation***. Nor is there a delegation of authority in any of the 472 instances of the word "Premera" in the SPD. *See* p. 8, n. 9, *supra*. The Ninth Circuit holds:

> To be an effective delegation of discretionary authority so that the differential standard of review will apply, therefore, the fiduciary must properly designate a delegate for the fiduciary's discretionary authority.
>
> * * *
>
> Because … the Named Fiduciaries did not expressly delegate their discretionary authority to the Plan Administrator, we find that the district court correctly employed the *de novo* standard of review.

R*odriguez-Abreu*, 986 F.2d at 584 (*citing Madden*, 914 F.2d at 1283-84).[12] The Plan documents never delegated discretionary authority to Premera.

//

//

---

[12] *See also Rodriguez-Lopez*, 850 F.3d at 23 ("[T]he delegation must be clear and the fiduciary must properly designate a delegate for the fiduciary's discretionary authority.") (also *citing Madden*, 914 F.2d at 1283-84); *Shane*, 381 F. Supp. 2d at 1203 (although power to delegate was reserved in the plan, nothing in the plan effected a delegation to a specific delegate: "[T]he 1993 Plan contains no *express* delegation of authority to *any body*, save the Trustees.") (emphasis in original); *O'Rourke v. Pitney Bowes*, 1997 U.S. Dist. LEXIS 11002, *19 (S.D.N.Y., July 31, 1997)("[T]he company has not provided any document reflecting any express delegation by the EBC to the plan administrator.").

**B.  Plaintiff Is Entitled To Coverage Of Sunrise's Treatment Under The Terms Of the Plan.**

Plaintiff has proved that her mental health conditions and substance abuse disorder could not have been adequately treated in a less restrictive environment than a residential treatment facility.  Her therapist, Julia Perry confirmed based upon her treatment of N.F. for five and a half months in 2015, and in January and February 2016, immediately before she entered New Vision (2/12/16, AR 225), that N.F. required inpatient treatment and provided N.F.'s parents with information about wilderness therapy and "standard" inpatient programs. AR 2525.[13]  She explained that in the second period of treatment, she treated N.F. "for Opiate Use Disorder, Severe... and Post Traumatic Stress Disorder" *and* that N.F.'s "drug use continued to increase, continued to be frequent and placed her in physical harm." *Id*. She cited N.F.'s February 2015 opiate overdose, Opiate Use Disorder, increasing drug use-related dangerous behaviors despite school and outpatient counseling after the overdose, and erratic behaviors that her parents could not manage at home as the basis for her recommendation.  *Id*.

N.F.'s New Vision providers also recommended that N.F. be admitted to a residential treatment facility.  New Vision's treatment team explained why residential treatment was medically necessary:

> without continued treatment in a structured environment that provides emotional
> support, balanced lifestyle (nutrition, exercise, sleep schedule, etc.), and
> supervised psychopharmacotherapy it is likely that she will relapse into patterns
> of behaviors that significantly increase her risk for depressive symptoms to return.

---

[13] Defendants note Ms. Perry provided her opinion in a "Letter of Medical Necessity."  Dkt. No. 29-1 at 2.  That was consistent with HIPAA privacy guidelines, which explain that it is appropriate for mental health providers to submit summaries of their treatment notes, which they maintain for their own review between sessions. U.S Dept. of Health & Human Servs., *HIPAA Privacy Rule and Sharing Information Related to Mental Health* (https://www.hhs.gov/sites/default/files/ hipaa-privacy-rule-and-sharing-info-related- to-mental-health.pdf) ("Psychotherapy notes are primarily for personal use by the treating professional and generally are not disclosed for other purposes." *Id*. at 5.). Defendants also assert that Ms. Perry "only discusses what happened after the sessions" in her letter. Dkt. No. 29-1 at 3.  Ms. Perry made clear that outpatient counseling had not been adequate to treat N.F.'s mental health conditions and substance use disorder and that her clinical opinion was that residential treatment was necessary.  Her letter appropriately addressed N.F.'s condition and needs immediately before she was admitted to New Vision.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

AR 227.  New Vision warned that skills N.F. had developed "to more successfully manage her anxiety" had "not been crystallized…[and] applied while in less restrictive environments" and that "[d]ue to [N.F.]'s guardedness and defense structure, she requires more structure, support, and therapeutic services than what is provided in outpatient or non-residential treatment programs." AR 228; *See also* Dkt. No. 28 at 11-12.  *See Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2019 U.S. Dist. LEXIS 35205, at *69-71 (N.D. Cal. Feb. 28, 2019) (the standard of care in mental health treatment is to treat the patient's underlying conditions, not just provide treatment to alleviate current symptoms).[14]

Dr. Corelli's April 2016 neuropsychological assessment[15] identified numerous deficits in executive function and substance abuse risk factors that corroborated Ms. Perry's and New Vision's assessments that N.F. could not be adequately treated in an outpatient setting.  The Behavior Rating Inventory of Executive Function (BRIEF) battery revealed "clinically significant elevations" in tests of "inhibitory control and impulsivity," "behavioral shifting," which "compromises problem-solving abilities," "emotional control," initiation, working memory, planning, organizing and self-monitoring.  AR 216-218.  N.F.'s responses on the Substance Abuse Subtle Screening Inventory, Second Edition (Adolescent) (SASSI-A2), "a measure of chemical dependency," suggested a "High Probability of a Substance Use Disorder." AR 220.

Dr. Corelli explained that N.F. had suffered multiple traumas in early childhood, resulting in "much underlying pain" and "an almost complete lack of coping skills, which is seen clearly in her history and current test results."  *Id.*  He explained that her "lack of coping skills means that

---

[14]  Defendants assert, "Although reimbursement for New Vision is not at issue…, NF provided medical assessments from her treatment at New Vision to support her claim for coverage at Sunrise." Dkt. No. 29-1 at 2, n. 2.  New Vision's treatment and recommendations are highly relevant. New Vision treated and observed N.F. 24 hours a day, from mid-February through mid-May 2016, until her transfer to Sunrise.  *See Id.* at *84 ("It is a generally accepted standard of care that the determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multidimensional assessment that takes into account a wide variety of information about the patient.").

[15] Defendants erroneously assert that Dr. Corelli's "evaluation is based entirely on information obtained from NF and her mother." Dkt. No. 29-1 at 4.  Dr. Corelli's neuropsychological evaluation included interviews of N.F. and her mother (AR 208-211) and administration of numerous psychological and neurocognitive test batteries.  AR 207, 211-220.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 14 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

whenever [she] is faced with a stressor, her tendency will be to feel overwhelmed and then engage in self-destructive behaviors. Her lack of coping skills also makes her vulnerable to experiencing a significant degree of anxiety…"  *Id.*   He noted N.F. "has begun dealing with her emotional difficulties through abusing substances" and "has experimented with a variety of drugs."  *Id.*

Dr. Corelli diagnosed Generalized Anxiety Disorder, Cannabis Use Disorder, Parent-Child Relational Problem and Executive Function Disorder.  AR 220-221.  He recommended that given the constellation of concerns, "following her discharge from NVW, [N.F.] will need to go on to a longer-term residential treatment program" which "should be small, structured, nurturing, and relational" with "[t]rauma informed treatment interventions," with individual, group, and family therapy.  AR 222.

N.F.'s treating therapist at Sunrise confirmed in his October 2016 report that in his clinical opinion, based upon treating N.F. for five months in a residential setting, that residential treatment had been medically necessary for her since her admission to Sunrise, and that it remained medically necessary because:

- N.F. continued to struggle to manage her mood, emotions, and interpersonal interactions, five months after admission to Sunrise. "She struggles to manage anxiety within relationships and often seeks out difficult or challenging relationships that she then becomes dependent upon."
- N.F. continued to experience "ongoing depressive symptoms of irritability, withdrawal, and difficulty beginning or starting activities."
- N.F. continued to be "impulsive, poorly tolerates distress" and "is argumentative, rigid in thinking and relationships, and struggles to accept feedback."
- N.F. continued "to require ongoing coaching in use of skills, labeling and experiencing her emotions, and managing relationships."

AR 203.  He warned why outpatient treatment would not meet N.F.'s treatment needs based upon observations of N.F. over the prior five months:

> [N.F.] will easily progress to a level of dangerousness, if she is treated outside of a RTC, and unable to maintain the gains in a non-therapeutically staffed environment while at home. That is, if [she] is to be treated in a less intensive setting, such as an out-patient facility, she likely will not have had the same success.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

*Id.* His warning is consistent with the standard of care.  "While effective treatment may result in improvement in the patient's level of functioning, it is well-established that effective treatment also includes treatment aimed at preventing relapse or deterioration of the patient's condition and maintaining the patient's level of functioning." *Wit,* 2019 U.S. Dist. LEXIS 35205, at *79. Treatment should be directed at reducing the risk of relapse:

> At [the residential treatment] level of care, treatment is not limited to addressing acute symptoms to achieve crisis stabilization; instead, it is designed to provide patients with an "opportunity to engage underlying chronic, recurrent, comorbid issues" so that they are able to "turn a corner" and move to a lower level of service intensity.

*Id.* at *64 (quoting trial testimony of board-certified psychiatrist).[16]

Plaintiff's providers' recommendations were consistent with the standard of care, as discussed in *Wit,* which followed a 10-day bench trial that included the testimony of experts (*Id.* at *24-39) and presented numerous nationally-recognized standard of care guidelines (*Id.* at *56-62):

- Effective mental health treatment requires the treatment of underlying conditions, not just alleviation of the patient's current symptoms. *Id.* at *68-71.  Criteria that place excessive emphasis on "acuity and crisis stabilization," rather than treatment of the underlying condition do not meet the standard of care. *Id.* at *87-88.  Indicia of such criteria that do not meet standard of care is that they terminate coverage when the "presenting symptoms" no longer justify the level of care, even if a lower level of care is not effective or available. *Id.* at *92, 94-95.
- "When there is ambiguity as to the appropriate level of care, the practitioner should err on the side of caution by placing the patient in a higher level of care." *Id.* at *76.
- Effective treatment is aimed at preventing relapse or deterioration of the patient's condition: "It is a generally accepted standard of care that effective treatment of

---

[16] Defendants argue that N.F. "never...saw a psychiatrist for prescriptions."  Dkt. No. 29-1 at 5.  Plaintiff's appeal refuted that contention, explaining "[N.F.] has been meeting with both a nurse and a psychiatrist on a weekly basis for evaluations during her stay at Sunrise," and pointed to where notes confirming this could be found in the medical record. AR 65.  Sunrise's website confirms two psychiatrists are on its staff. Dkt. No. 27-3 at 160. If Premera still doubted N.F. was under a psychiatrist's care after reviewing her appeal, it was incumbent upon Premera to contact her parents or Sunrise.  This is how "civilized people communicate about important matters."  *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1462 (9th Cir. 1997). Defendants also assert that N.F. never received any psychiatric or psychological assessment at Sunrise." Dkt. No. 29-1 at 5. This is a red-herring.  Residential treatment was recommended by four treating providers. Further, the Plan covers mental health treatment provided by a licensed "master's level mental health provider" (AR 1091) and Defendants never raised provider eligibility as a basis for denial.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 16 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

mental health and substance use disorders includes services needed to maintain functioning or prevent deterioration." *Id.* at *78-79.

- "The appropriate duration of mental health treatment is based on the individual needs of the patient; there is no specific limit on the duration of such treatment." *Id.* at *80-81.

- Effective mental treatment decisions should take into account the whole person. *Id.* at *84-87. "It is a generally accepted standard of care that the determination of the appropriate level of care for patients with mental health and/or substance use disorders should be made on the basis of a multidimensional assessment that takes into account a wide variety of information about the patient." *Id.* at *84.

### C.  Defendants' Denial Decision Is Erroneous.

1.  **Defendants' consultants provided rushed, conclusory opinions, failed to address the record, applied more stringent standards than those stated in the Plan, and imposed coverage requirements that were inconsistent with the standard of care.**

   a.  **Defendants' consultants failed to discuss the medical record or contact N.F.'s providers.**

Defendants' consultants provided rushed, same-day opinions (*see* Dkt. No. 28 at 16, 19) that did not provide any meaningful discussion of N.F.'s history or medical record. In a few short sentences, the consultants simply asserted that residential treatment was not medically necessary. They failed to discuss N.F.'s history, which included early childhood trauma (e.g., sexual abuse, neglect, witnessing of domestic violence, homelessness), relinquishment and adoption, her birth father's recent death, significant distress over recent discord between adoptive parents, and an overdose and substance abuse disorder. They did not address her dual diagnosis. Their conclusions that residential treatment was not required was contrary to the opinions of four providers, yet they failed to contact a single provider to discuss their experience treating N.F. or the basis for their conclusions. In short, they did not engage in the communication that ERISA requires when the non-examining physician's opinion is contrary to that of the treating providers, particularly when the claim involves a mental health condition. *See Id.* at 14 (citing *Sheehan v. Metro. Life Ins. Co.*, 368 F. Supp. 2d.228, 254 (S.D.N.Y. Mar. 15, 2005). Premera did not ask its consultants to speak with the treating providers or to go back and carefully evaluate their

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

conclusions in light of the unanimous opinions of the providers; instead Premera used its consultants' reports "like a lottery ticket" to deny Plaintiff's claim.  *See Macnally v. Life Ins. Co. of N. Am.*, No. 07-CV-4432 (PJS/JJG), 2009 U.S. Dist. LEXIS 44423, at *86 (D. Minn. May 26, 2009).

> **b.  Defendants' consultants imposed standards that did not meet the standard of care and were more stringent than those stated in the Plan.**

Defendants' consultants mechanically applied the InterQual criteria (AR 1230-31), which impose conditions more stringent than the Plan's terms and do not meet the standard of care.  The consultants recommended denial based primarily upon the absence of aggressive behaviors and based upon the fact residential treatment was not expected to be "short term" only.   Defendants erred by relying upon these erroneous opinions. *See* Dkt. No. 28 at 16-21.

Premera's denial decision expressly stated that its coverage criteria required that treatment be short-term: "continued residential treatment for a mental health condition is medically necessary only when short-term treatment is planned"; "The information from your provider does not show that short-term treatment is planned." AR 1246.  The Plan does not require that planned residential mental health treatment be limited to a short-term stay.  AR 1090.  Nor are "short-term stays" the standard of care.  *See Wit,* 2019 U.S. Dist. LEXIS 35205, at *88 (concluding "by a preponderance of the evidence, that in every version of the Guidelines in the class period, and at every level of care that is at issue in this case, there is an excessive emphasis on addressing acute symptoms and stabilizing crises while ignoring the effective treatment of members' underlying conditions" and that this "defect is pervasive and results in a significantly narrower scope of coverage than is consistent with generally accepted standards of care."); *See* Dkt. No. 28 at 17-18. *See also* AR 108-121 (literature review, submitted with Plaintiff's appeal, confirming an average length of stay in residential treatment is 7 to 12 months), AR 63 (Plaintiff's appeal).

Defendants' consultants and Premera's claim denial letter also pointed to the fact Plaintiff did not show extreme behaviors to justify the denial.  *See* AR 1246 (Dr. Small, citing a lack of

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 18 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

documentation of "angry outburst," " hurt or tried to hurt others," "hurt yourself or have thoughts about hurting yourself," "destroyed property, "refusing to go to the school program every day," "interacting with others in angry ways"), 133 (Dr. Holmes, citing a lack of " self-harming behavior or risk of self-harm," "significant agitation, aggression, or inappropriate behavior"), 126 (Premera's denial).

The Court in *Wit* concluded that this approach does ***not*** meet the standard of care.  The Court explained that the "question that should be considered under generally accepted standards of care" is "whether the services being considered will be effective in treating not only the current symptoms but also the individual's underlying condition."  2019 U.S. Dist. LEXIS 35205, at *94.  The Court rejected the emphasis in the administrator's treatment guidelines on "acute symptoms", "crisis stabilization" and an approach that disfavored "treatment of long-term, chronic conditions beyond what is necessary to treat the presenting symptoms..."  *Id*. That treatment is anticipated to be "long-term" does not render it medically unnecessary.  This is particularly true where, as here, the Plan definition of "medically necessary" is not limited to short-term mental health treatment. AR 1141, 1090-1091.

### 2.  Defendants cite inapposite cases without analysis.

Defendants cite numerous cases, but provide no analysis, to support their assertion that "Premera's approach of covering the least intensive effective level of care has been repeatedly upheld by courts." Dkt. No. 29-1 at 22; *See Id*. at 21-22.  Their broad brush assertion ignores all facts and the applicable coverage criteria.[17] In *Doe v. Harvard Pilgrim Health Care, Inc.*, Civil

---

[17] In four of the five cases cited by Defendants, the applicable standard of review was "abuse of discretion." *Krysten v. Blue Shield of California,* No. 15- CV-02421-RS, 2016 U.S. Dist. LEXIS 141486, at *9 (N.D. Cal. Oct. 11, 2016), *aff'd sub nom. Krysten C. v. Blue Shield of California,* 721 F. App'x 645 (9th Cir. 2018); *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1133 (10th Cir. 2011); *Jon N. v. BlueCross BlueShield Mass., Inc.*, 684 F. Supp. 2d 190, 202 (D. Mass. 2010); *O.D. v. Jones Lang Lasalle Med. PPO Plus Plan*, No. 1:15-CV-03285-ELR, 2017 U.S. Dist. LEXIS 203873 (N.D. Ga. June 9, 2017).  Under this standard, the Court simply determines whether the administrator's decision was arbitrary and capricious.  *See Id.*, at *7 ("The Court today offers no opinion as to whether Defendant's decision was "absolutely correct in reality." [*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1357 (11th Cir. 2011)]. Rather, the Court finds that Defendant had discretion to review claims under the Plan4 and its decision was reasonable. *See id*. at 1356-57 (affirming the plan administrator's decisions as reasonable without addressing whether the decisions were *de novo* correct).").

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

Action No. 15-10672, 2019 U.S. Dist. LEXIS 131091 (D. Mass. Aug. 6, 2019), the only one of the five cases decided under a *de novo r*eview, the Court cited facts demonstrating an extraordinarily high level of function in upholding the administrator's denial of coverage of residential treatment, including that the Plaintiff "frequently left" the facility "in the evenings and spent several nights off campus to visit family and friends," "went skiing with friends...shopping, ...to a concert, dumpster diving with friends, ...to the movies, ...and to an antique show" and "spent nearly twenty days away from [the facility]" for vacations and medical appointments during her first admission." 2019 U.S. Dist. LEXIS 131091, at *34.   No similar evidence is present in N.F.'s record.  Indeed, the evidence is overwhelming that N.F. could not be safely treated in a less restrictive setting.

Defendants attempt to distinguish this case from *Dominic W. on behalf of Sofia W. v. N. Tr. Co. Employee Welfare Benefit Plan*, No. 18 C 327, 2019 WL 2576558 (N.D. Ill. June 24, 2019), where coverage was allowed.  Defendants focus on that plaintiff's suicidality (*See* Dkt. No. 29-1 at 23) but ignore the *Dominic W.* court's conclusion that the standard of care requires coverage for the lowest level of medically necessary treatment, ***taking account*** the patient's lengthy history of trauma, co-morbid symptoms of mental illness and dependency.  In other words, the standard of care provides for medically necessary treatment that would not just alleviate N.F.'s acute symptoms, but that would also reduce her risk of relapse and result in long-term improvement of her mental health for life.  *See supra,* p. 16 (addressing standard of care).  That level of care was residential treatment at Sunrise, according to her three treating mental health providers and the examining neuropsychologist. No examining mental health professional held an opinion to the contrary.

Defendants' denial decision should be overturned because it relied upon medical opinions that ignored N.F.'s medical history and the unanimous, well-reasoned opinions of her treating mental health providers; and imposed criteria more stringent than those stated in the Plan and that

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

did not meet the standard of care.  Defendants and their consultants failed to analyze the medical records and failed to investigate, even though their conclusions were contrary to the opinions of N.F.'s treating providers.

**D.  The Court Should Not Consider the Unauthorized and Highly Improper IRO Decision.**

Defendants put at front and center their anonymous external review (IRO) opinion, without addressing the undisputed fact that Plaintiff never requested or consented to an IRO review of the denial of treatment at Sunrise.  Premera's disclosure of N.F.'s Sunrise records violates ERISA, HIPAA and the Washington Health Care Information Access and Disclosure Act.  Dkt. No. 28 at 22-23.  The improper IRO decision must be disregarded – it was never requested or consented to by N.F.; it was based upon records that were not authorized by N.F. to be disclosed to a third party; and the IRO reviewer never had the benefit of evidence or argument submitted by N.F. to support her position.

Incredibly, no one -- not the IRO company, its reviewing physician, or even Premera -- noticed that Plaintiff's IRO request for review of Premera's denial of ___**New Vision's**___ treatment of N.F. (AR 11, 14-23) did not match the ___**Sunrise**___ medical record submitted by Premera to the IRO.  This undisputed fact calls into question whether anyone involved in the external review actually read the records or N.F.'s New Vision appeal.  *Id*.  The IRO review is wholly unreliable for this reason as well.

The IRO opinion also should be rejected because it was issued more than a month after Defendants' final administrative decision.  AR 126-127, 1159-1161.  The Ninth Circuit holds that the "record for judicial review of benefits determinations under ERISA is 'the record upon which the plan administrator relied in making its benefits decision[.]'" *Yox v. Providence Health Plan*, No. 3:12-cv-01348-HZ, 2013 U.S. Dist. LEXIS 181547, at *13 (D. Or. Dec. 31, 2013) (quoting *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th Cir. 2012).  It does not include any external review that occurs ***after*** the plan administrator issues its final administrative

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 21 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

decision.   In *Yox*, the district court concluded, "Because the IRO decision was not part of the record Defendant relied upon in making its decision, I will not consider the IRO decision as part of the administrative record in determining whether Defendant abused its discretion by denying Plaintiff's claim." *Id*. at *14.

Even if the Court were to consider the improperly obtained IRO decision (and it should not) the IRO reviewer applied additional criteria that were inconsistent with Plan's terms, just as Dr. Small and Dr. Holmes did.  The reviewer cited the fact treatment was not expected to be short-term and that N.F. was not exhibiting violent behaviors or suicidality as the basis for the determination that residential care was not medically necessary.  AR 1160 (noting N.F. was not "suicidal, homicidal, or gravely impaired to care for herself.").  ***None of those criteria are stated in the Plan***.  *See* Dkt. No. 28 at 17-19, 22 (addressing Dr. Small's and Dr. Holmes' failure to apply the Plan's terms and mechanical application of InterQual criteria that impose conditions more stringent than the Plan's terms and that do not meet the standard of care).  Moreover, the IRO opinion is wholly inadequate, consisting of just six lines.  It asserts a general conclusion, but does not address the medical record or Plaintiff's providers' unanimous opinions that residential treatment was medically necessary.  AR 1160; *See* Dkt. No. 28 at 14-15.

Defendants cite seven cases to support their argument that they are "bound" by the improper IRO opinion, implying that the Court should be as well.  Dkt. No. 29-1 at 18-19. Each case is easily distinguished because none involved an IRO review that was not requested or authorized by the Plaintiff, and occurred in violation of state and federal privacy laws.[18] Indeed, many of the cases relied upon by Premera do not even refer to an IRO decision.[19]

---

[18] *See Continental Med. Transp. LLC v. Health Care Serv. Corp.*, No. C20-0115-JCC, 2021 U.S. Dist. LEXIS 98015, 2021 WL 2072524, *3 (W.D. Wash. May 24, 2021) (The trial court merely noted the decision of the IRO but did not rely upon it for its determination); *Peter B. v. Premera Blue Cross*, No. C16-1904-JCC, 2017 U.S. Dist. LEXIS 177877, 2017 WL 4843550, *10 (W.D. Wash. Oct. 26, 2017)(same); *Tracy O. v. Anthem Blue Cross. Life & Health Ins. Co.*, No. 2:16-cv-422-DB,  2017 U.S. Dist. LEXIS 127326, 2017 WL 3437672, at *9 (D. Utah Aug. 10, 2017) (same).

[19] *See* Dkt. No. 29-1 at 19 (citing *Blair v. Alcatel-Lucent Long TermDisability Plan*, 688 F. App'x 568, 576 (10th Cir. 2017), *Basquez v. East Cent. Okla. Elec. Coop., Inc.*, No. 06-cv-487 (SPS), 2008 WL 906166, at *11 (E.D.

In sum, Defendants' anonymous IRO opinion was obtained without Plaintiff's consent, in violation of state and federal laws.  It was obtained after the close of the administrative record, precluding Plaintiff from addressing it or the qualifications of the reviewer.  It appears that neither Premera nor the IRO reviewer actually read the materials submitted by Plaintiff – ***if they had, they would have realized that Plaintiff had appealed a different denial.***  And, the reviewer did not apply the Plan's terms but applied more stringent criteria that ignored the standard of care. Finally, the conclusory report does not discuss the medical record.  The IRO opinion should be disregarded based upon the law and the unique facts of this case.

**E. Defendants should be ordered to approve and process Plaintiff's coverage claim in accordance with the Plan.**

This is an egregious example of a health plan that is not functioning to serve the best interests of its members.  No "full and fair review" was provided to N.F.  The procedural and substantive errors at every step of this case are unprecedented:

- Defendants' coverage denial ignored Plaintiff's medical record and the unanimous opinions of her treating providers, supported by detailed explanations, that Sunrise's residential care was medically necessary.
- Defendants arbitrarily applied treatment guidelines that are not incorporated into the Plan, and that imposed standards for coverage that do not appear in it.
- Defendants failed to consider Plaintiff's co-morbid conditions in determining medical necessity, and applied criteria that violated the standard of care.
- Defendants did not explain the basis for their disagreement with Plaintiff's providers in their denial letters.
- On top of the extremely shoddy internal review process, Premera sent the ***wrong appeal and unauthorized private medical information*** to the external reviewer. As a result, the IRO appeal contained no evidence or argument by N.F. in support of coverage for her treatment at Sunrise.
- When the wrong appeal arrived at the external reviewer, no one even noticed.  And when the wrong appeal decision was returned to Premera, it too did not notice the error.
- Although it is undisputed that the IRO review was unauthorized, illegal, occurred outside of the administrative record, and without providing N.F. a fair opportunity to make her case, Defendants argue that the Court should still rely upon the determination!

---

Okla. Mar. 31, 2008),  *Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006) and *Krysten C., supra,* 2016 U.S. Dist. LEXIS 141486, 2016 WL 5934709, at *4-5.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 23 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400

- Defendants then attempt to sandbag Plaintiff with previously undisclosed plan related documents, despite failing to produce these documents, pre-litigation and during discovery, in order to revive their defense.

In sum, in few cases have a plan administrator and claims administrator so wholly failed to conduct a full and fair review of a claim.  Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), the Defendants' denial should be overturned and Defendants should be required to approve and pay Plaintiff's claim for Sunrise's residential treatment in accordance with the Plan's terms.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' Motion For Summary Judgment and enter judgment in favor of Plaintiff.

DATED:  September 20, 2021.


MEGAN E. GLOR ATTORNEYS AT LAW

___*s/ Megan E. Glor*_____
Megan E. Glor (OSB #930178)
*(*Admitted *pro hac vice)*
  707 NE Knott Street, Suite 707
  Portland, OR  97212
  Tel. (503) 223-7400 ♦ Fax (503) 751-2071
  megan@meganglor.com
Attorneys for Plaintiff

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 24 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212    503-223-7400

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:

4

5

- **Megan E. Glor**
  megan@meganglor.com

6

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, theresa@sylaw.com

7

8

- **Gwendolyn C. Payton**
  GPayton@kilpatricktownsend.com, abianco@kilpatricktownsend.com,
  irountree@kilpatricktownsend.com

9

10

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com,
  theresa@sylaw.com

11

12

- **Devin Mark Smith**
  devinsmith@dwt.com

13

14

- **Christine Hawkins**
  christinehawkins@dwt.com

15

16

and I have mailed by United States Postal Service the document to the following non-CM/ECF

participants:

17

- (No manual recipients)

18

DATED:  September 20, 2021, at Portland, Oregon.

19

20

  s/ Megan E. Glor

Megan E. Glor

megan@meganglor.com

21

22

23

24

25

26

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY  JUDGMENT - Page 25 of 25**
[Case No. 2:20-cv-00956-JCC]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212   503-223-7400