THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.F., by and through her mother and next friend, M.R.,<br><br>      Plaintiff,<br>   v.<br><br>PREMERA BLUE CROSS, *et al.*,<br><br>      Defendants. | CASE NO. C20-0956-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 28), Defendants' joint motion for summary judgment (Dkt. No. 26) and Defendant Premera Blue Cross's ("Premera") motion to seal (Dkt. No. 24). Having thoroughly considered the parties' briefing, the relevant record, and finding oral argument unnecessary, the Court hereby GRANTS Defendants' motions (Dkt. Nos. 24, 26) and DENIES Plaintiff's motion (Dkt. No. 28) for the reasons explained herein.

## I. BACKGROUND

Plaintiff brought a complaint on behalf of her daughter, N.F. (Dkt. No. 1 at 1.) She alleged that her employer, Microsoft Corporation; its employee welfare plan; and its administrator, Premera (collectively "Defendants") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, when Premera denied coverage for N.F.'s

continuing treatment at the Solacium Sunrise Residential Treatment Center ("Sunrise"). (*Id.* at 2–4.) Premera did so after concluding that further treatment at a residential treatment facility was not medically necessary, at least as provided in the employee welfare plan. (*Id.*, *see* Dkt. No. 25 at 50–52 (denial letter).)

Prior to her placement at Sunrise, N.F. spent three months at New Vision Wilderness. (Dkt. No. 1 at 4.) There, she was treated for depression and anxiety, cannabis and opioid use, parent-child relational problems, and a disorder involving executive functioning. (*See* Dkt. No. 25 at 228 (New Vision's discharge summary).) As her discharge date neared, New Vision recommended that N.F. be placed at Sunrise, rather than be discharged to outpatient treatment. (*Id.*) New Vision reasoned that outpatient treatment would not provide N.F. the "structure, support, and therapeutic services" she required to continue the progress she had achieved at New Vision. (*Id.*) Consistent with this recommendation, N.F. was transferred to Sunrise, where she spent fourteen months before returning home. (Dkt. No. 1 at 4.)

Plaintiff submitted an internal appeal of Premera's initial denial, which Premera also denied. (*See* Dkt. No. 25 at 126–29 (denial letter).) An external reviewer later upheld that decision. (*See* Dkt. No. 25-2 at 226.)[1] The parties first entered into a tolling agreement to allow them more time to explore a settlement. (Dkt. No. 1-5.) Unable to reach a settlement, Plaintiff brought the instant suit. (*See* Dkt. No. 1.) The parties now cross-move for summary judgment on Premera's denial determination, (Dkt. Nos. 26, 28) and Defendant Premera moves to seal the administrative record (Dkt. No. 24).

---

[1] The review was performed by an Independent Review Organization ("IRO") as provided by Wash. Rev. Code § 48.43.535. (*See* Dkt. No. 25-2 at 226.) In her briefing to the Court, Plaintiff asserts that she never authorized this review. (*See* Dkt. Nos. 28 at 7–8, 31 at 21–24.) This is not consistent with her complaint, which indicates that "N.F.'s parents requested an external review of the Plan's denial decision, issued through Premera." (Dkt. No. 1 at 5.) Regardless, the IRO's decision was not before Premera when it denied coverage for N.F.'s continued stay at Sunrise and the Court need not consider it.

## II. DISCUSSION

### A. Legal Standard – Summary Judgment

In an ERISA case, a motion for summary judgment is "the conduit to bring [the] legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999). The Court, in reviewing the administrative record for a plan administrator's denial decision, applies a *de novo* standard of review "unless the plan provides to the contrary." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants the administrator "discretionary authority to determine eligibility for benefits," the administrator's decision is reviewed for an abuse of discretion. *Id.*

Plaintiff and Defendants disagree whether Premera was afforded the discretionary authority necessary to warrant this Court's review of its decision for an abuse of discretion. (*See* Dkt. Nos. 28 at 8–9, 29-1 at 15–18.) Plaintiff, in arguing for *de novo* review, asks the Court to rely on a *de novo* review determination that the Court made in a different case. (*See* Dkt. No. 31 at 6–7 (citing *See A.H. by and through G.H. v. Microsoft Corp. Welfare Plan*, 2018 WL 2684387, slip op. (W.D. Wash. 2018)).) But the ruling in that case was in response to a motion brought pursuant to Rule 12(b)(6). *See A.H. by and through G.H.*, 2018 WL 2684387, slip op. at 1. In doing so, the Court indicated that its determination was based upon the record before it at the time. *Id.* at 3. The record before the Court here is equivalent to the record before it in *Peter B. v. Premera Blue Cross, et al.*, 2017 WL 4843550, slip op. at 1 (W.D. Wash. 2017). In *Peter B.*, the Court concluded that an abuse of discretion review was warranted. *See id.*

Admittedly, the plan documents vary slightly between this case and that of *Peter B*. But the distinction between the two is immaterial. In *Peter B.*, the relevant Microsoft Employee Welfare Summary Plan Description ("SPD") was for the year 2015. *See* C16-1904-JCC, Dkt No. 48-2 (W.D. Wash 2017). Here, the relevant SPD is for the year 2016. (*See* Dkt. No. 25-2.) But the key delegation provisions, in this and the other plan documents, are equivalent. (*Compare*

1  Dkt. Nos. 27-1 at 20, 27-5 at 15–17, 44; *with Peter B.*, C16-1904-JCC, 39-1 at 5, 48-1 at 15–17, 48-2 at 20.)[2]

Accordingly, the Court FINDS that, as was the case in *Peter B.*, Microsoft's employee welfare plan affords Premera, as the plan administrator, sufficient discretion in making coverage determinations that its denial decision regarding N.F.'s continued treatment at Sunrise must be reviewed for an abuse of discretion.

### B.     N.F.'s Continued Treatment at Sunrise Not Medically Necessary *as Defined by the Plan*

Regardless of the standard of review, the key issue before the Court remains the same: Whether N.F.'s continued care at Sunrise, beyond the thirteen days that Premera initially authorized, was medically necessary. (*See* Dkt. Nos. 28 at 9–24, 29-1 at 21–25 (the parties' respective arguments on the issue).)[3] If so, Premera's decision to deny coverage would represent an abuse of discretion. It seems clear that N.F.'s providers thought that continued treatment at a residential care facility was medically necessary. (*See, e.g.*, Dkt. No. 25 at 200–01, 203, 222, 228.) But that is not the issue before the Court. At issue is what is medically necessary, *as defined by the plan*.

According to the plan, a treatment is medically necessary if it is "appropriate for the

---

[2] Plaintiff suggests that the Court should disregard plan documents which were not part of Premera's administrative record and not provided in discovery. (Dkt. Nos. 31 at 8–11, 35 at 2–4.) According to Plaintiff, had she been provided the documents, she would have sought conflict discovery. (*Id.*) But here such discovery would have been fruitless. The plan funder, Microsoft and its employee welfare plan, delegated plan administration to a third party, Premera, whose fee was not tied to the cost of claims. Therefore, there could be no conflict of interest and no prejudice could result from Defendants' failure to provide these documents. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 921 (9th Cir. 2012) (a conflict exists when a plan administrator is financially liable for payment of claims); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008) (a conflict exists when a plan administrator is incentivized, through its fee stricture with the self-insuring employer, to reduce the cost of claims to the employer).

[3] Plaintiff further argues that Premera abused its discretion and/or rendered an erroneous decision in other ways. (*See generally* Dkt. Nos. 28 at 13–24, 31 at 17–24.) The Court limits its discussion to the issue of what is medically necessary, which it finds to be determinative.

medical condition as specified in accordance with authoritative medical or scientific literature and generally accepted standard of medical practice," which "are based on credible scientific evidence published in peer-reviewed medical literature that is generally recognized by the relevant medical community, Physician Specialty Society recommendations, the views of physicians practicing in relevant clinical areas, and any other relevant factors." (Dkt. No. 25-2 at 316–17.) Moreover, the SPD indicates that a prior authorization, which Plaintiff had sought for N.F.'s continued stay at Sunrise, (*see* Dkt. No. 25 at 85–87), "confirms that the treatment plan submitted by the treating provider is medically necessary for the condition based on national, evidence-based guidelines." (Dkt. No. 25-2 at 141.)

In determining whether a course of treatment is within the generally accepted standard of medical practice, Premera utilizes a medical policy from McKesson called InterQual. (*See* Dkt. No. 29-1 at 9.) Here, Premera relied on McKesson's March 2016 InterQual Child and Adolescent Psychiatry review criteria. (*See id.* at 27.) According to the InterQual criteria, for residential care to be medically necessary, N.F. would have had to display specific symptoms on a weekly basis, such as disruptive behavior or nonsuicidal self-injury, coupled with additional symptoms demonstrating a lack of function, and, finally, the facility would need to provide a suite of therapeutic services at regular intervals, including weekly psychiatric evaluations, daily clinical assessments, and therapy sessions at least three times per week. (Dkt. No. 27-4 at 13–16.) It is undisputed that N.F. did not display the requisite symptoms and Sunrise did not provide all the services at the required intervals. (*See generally* Dkt. No. 31 at 18–19.) Instead, in arguing for summary judgment, Plaintiff focuses the Court on the *manner* in which Premera adopted and applied the InterQual criteria. (*See* Dkt. No. 28 at 10, 17, 21.)

Plaintiff first argues that Premera's use of the InterQual criteria was an abuse of discretion because the criteria were not explicitly incorporated into the plan. (Dkt. Nos. 28 at 10, 31 at 22.) The Court disagrees. The SPD's references to "evidence-based guidelines," and "the views of physicians practicing in relevant clinical areas, and any other relevant factors," (Dkt.

No. 25-2 at 141, 316–17), are sufficient to incorporate the criteria into the plan. *See, e.g., Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 48 (W.D.N.Y. 2020) (finding use of similar language sufficient for incorporation); *see also Winter ex rel. U.S. v. Gardens Regl. Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1115–16 (9th Cir. 2020) ("The InterQual criteria . . . are reviewed and validated by a national panel of clinicians and medical experts, and represent a synthesis of evidence-based standards of care, current practices, and consensus from licensed specialists and/or primary care physicians.") (internal quotation marks omitted).

Plaintiff next argues that InterQual's standard for whether residential treatment is medically necessary is more stringent than what is provided in the plan. (Dkt. Nos. 28 at 10, 31 at 18–19, 35 at 3–6.) While InterQual's criteria are certainly more *specific* than the plan, the Court does not find them to be more stringent. (*Compare* Dkt. Nos. 27-1, 27-5; *with* Dkt. No. 27-4.) Moreover, the Court has already addressed this issue, finding that comparably specific criteria "comport[] with generally accepted standards of care." *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 2021 WL 2911121, slip op. at 14 (W.D. Wash. 2021).[4]

Finally, Plaintiff argues that Premera misapplied InterQual's criteria because it failed to consider N.F.'s dual diagnosis, namely her mental health and substance abuse issues. (Dkt. Nos. 28 at 21–22, 35 at 6–7.) Premera only applied the InterQual criteria for psychological disorders. (Dkt. No 35 at 6–7.) But according to the record, Premera did, in fact, consider the substance abuse diagnoses; it concluded that the resulting symptoms at the time of N.F.'s discharge from New Vision were not sufficiently severe to warrant continued residential treatment. (*See* Dkt.

---

[4] While the standards in *Todd R.* were based on the Milliman criteria, this is a distinction without a difference. "Both [Milliman and InterQual] were developed by independent companies with no financial interest in admitting more inpatients than outpatients . . . The InterQual Criteria were written by a panel of 1,100 doctors and reference 16,000 medical sources . . . About 3,700 hospitals use InterQual and about 1,000 use Milliman—over 75% of hospitals nationwide." *Norfolk Cnty. Ret. System v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 690 (6th Cir. 2017). District courts routinely find that InterQual's criteria comport with generally accepted standards of care. *See, e.g., Julie L.*, 447 F. Supp. 3d at 48; *M. S. v. Premera Blue Cross*, 2021 WL 3511094, slip op. at 16 (D. Utah 2021).

No. 25 at 127.) This comports with the only psychological report in the record—prepared while at N.F. was still at New Vision. (Dkt. No. 25 at 205–22.) According to the report, N.F. indicates that she now wants "nothing to do with" illicit drugs. (*See* Dkt. No. 25 at 210.) While the report does recommend continued treatment at a residential facility, it appears that this was based, not on N.F.'s past substance abuse issues, but on her psychological disorders, namely "deficits in executive functioning." (*Id.* at 222.)

Regardless, the plan language clearly indicates that, for N.F. to be eligible for coverage at a residential treatment center, "[a]t least weekly physician visits are required." (Dkt. No. 27-1 at 106, 324.) It is undisputed that Sunrise did not provide this service. (*See generally* Dkt. Nos. 28, 31.)

Accordingly, the Court FINDS that N.F.'s continued care at Sunrise, beyond the thirteen-day period previously authorized by Premera, was not medically necessary as defined by the plan. As such, it was neither arbitrary, nor capricious, nor erroneous for Premera to deny coverage.

### B.  Premera's Motion to Seal

Premera moves to seal the administrative record in this matter (Dkt. No. 24), which contains N.F.'s personal medical information. (*See* Dkt. No. 25, 25-1–25-7.) In general, there is a strong presumption for public access to court files. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); W.D. Wash. Local Civ. R. 5(g). A party seeking to seal a document attached to a dispositive motion must provide compelling reasons "that outweigh the general history of access and the public policies favoring disclosure . . . ." *Kamakana*, 447 F.3d at 1179. Here, the Court FINDS that compelling confidentiality concerns regarding the health records of a minor, N.F., outweigh the presumption of public access to the Court records.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment

(Dkt. No. 28), GRANTS Defendants' joint motion for summary judgment (Dkt. No. 26), and GRANTS Defendant Premera's motion to seal (Dkt. No. 24.) Judgment is awarded to Defendants on all of the claims contained in Plaintiff's complaint and the Clerk is DIRECTED to maintain Docket Numbers, 25, 25-1, 25-2, 25-3, 25-4, 25-5, 25-6, and 25-7 under seal.

DATED this 14th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE